UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY HILL,

    Petitioner,

v.

STATE OF MICHIGAN,

    Respondent.
_____/

Case Number: 07-CV-15142
HON. DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Harry Hill, ("Petitioner"), through his attorney Isaish Lipsey, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of embezzlement of $20,000.00 or more in violation of MCL 750.174. (5)(a). For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. Petitioner's conviction arose out of an association with a little league team where he worked as an assistant coach, coach and fund raiser, and then as president over a period of 10 years prior to his charge and conviction for embezzlement.

Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of

the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997). The Court will merely recite verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> The prosecutor's theory was that defendant, while serving as volunteer president of the Canton Community Junior Baseball and Softball Association, embezzled approximately $169,000 from the league by writing himself approximately 70 checks drawn against an account intended to pay the league's vendors. The defense did not dispute that defendant had written checks to himself for such amounts, but maintained that in so doing he was in fact partially reimbursing himself for expenses he had personally covered on the league's behalf....
>
> The league's vice president in charge of equipment, who other than defendant was the only authorized signer of league checks for the time in question, testified that defendant had induced her to sign and leave in his possession many blank checks, that she had never signed one that was already made out to defendant, and that she had no knowledge that defendant was writing checks to himself. She further testified that defendant never indicated that he was collecting from the league monies owed to him.
>
> The league's director and vice president for lower baseball testified that defendant eventually admitted taking money from the league, with the explanation, "'I had a tough year. I needed the money'" This witness testified that defendant acknowledged having taken $110,000, and promised to repay it, but never did so.
>
> The evidence that defendant initially took the league's money secretly, that he complained of needing money because of bad times, and that he promised to pay back much of the amount at issue, was sufficient to persuade a reasonable trier of fact that defendant took the league's money for personal reasons unrelated to any putative indebtedness of the league to him. Defendant asserts,

without citation, that the evidence showed·that he had contributed significant sums to the league, and that when the league became financially stable, he began to withdraw sums he believed the league owed to him. Although there was some evidence that defendant had indeed lent the league money from his own pocket, there was certainly none to indicate that he did so through the use of sufficient documentation, and other formalities, that would have established his entitlement to repayment as an indisputable matter of fact and law. Instead, defendant's theory, and the evidence that supported it, left a question for the jury to consider. Because the jury rejected that theory, it cannot be revived on appeal. "Credibility is a matter for the trier of fact to ascertain. We will not resolve it anew." People v Vaughn, 186 Mich App 376, 380; 465 NW2d 365 (1990).

*People v. Hill, Jr.,* No. 259717, 2006 WL 1042007, *1-2 (Mich. Ct. App. April 20, 2006).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of embezzlement of $20,000 or more. On November 23, 2004, he was sentenced to five years' probation, the first year to be served in jail with work release, and to pay restitution.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

    I.    Defendant-appellant's conviction should be reversed because there was insufficient evidence to find for the conviction; alternatively, the motion for directed verdict should have been granted.

    II.    Defendant-appellant is entitled to a new trial where he was denied effective assistance of trial counsel.

The Michigan Court of Appeals affirmed the conviction. *People v. Hill, Jr.,*

3

No. 259717, 2006 WL 1042007, *1-2 (Mich. Ct. App. April 20, 2006).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the following claims:

I. Defendant-appellant's conviction should be reversed because there was insufficient evidence to find for the conviction; alternatively, the motion for directed verdict should have been granted.

II. Defendant-appellant is entitled to a new trial where he was denied effective assistance of trial counsel.

III. If the defendant-appellant's witnesses can testify to a time line that shows the defendant was told by a certified public accountant, that the money he spent on behalf of the organization would be considered "an on demand loan, that he could take back at anytime he wanted to" would that give reasonable doubt to the jury by showing there was no intent to steal or defraud, which is needed as an element in this case? Or show the defendant was denied effective assistance of counsel from the court appointed counsel?

IV. If the defendant-appellant's witnesses can testify to a time line that shows that defendant told vendors that he was told by a certified public accountant, that the money he spent on behalf of the organization would be considered "an on demand loan, that he could take back at anytime he wanted to" and that there was no intent to steal or defraud, is sufficient to prove beyond a reasonable doubt that the defendant did believe that the money was his to take? Would this evidence along with the other supporting evidence be enough for a motion for directed verdict or new trial?

V. If the defendant-appellant's witnesses can testify to a time line that shows the defendant was told by a certified public accountant, that the money he spent on behalf of the organization would be considered "an on demand loan, that he could take back at anytime he wanted to" and that the defendant asked his trial attorney to subpoena these witnesses and the attorney did not subpoena any of the defendant's witnesses is this enough to show the defendant was denied effective assistance of counsel from the circuit court appointed counsel?

VI. If the defendant-appellant's witnesses can testify to a time line that shows the defendant told vendors that he was told by a certified public accountant, that the money he spent on behalf of the organization would be considered "an on demand loan, that he could take back at anytime he wanted to" and that there was no intent to steal or defraud, and that the defendant asked his trial attorney to subpoena these witnesses and the attorney did not subpoena any of the defendant's witnesses is this enough to show the defendant was denied effective assistance of counsel from the circuit court appointed counsel?

VII. If the defendant-appellant's witnesses can testify to a time line that shows the defendant was told by a certified public accountant, that the money he spent on behalf of the organization would be considered "an on demand loan, that he could take back at anytime he wanted to" and that the defendant asked his appeals attorney to include these witnesses and their testimony in the appeal whereas the attorney did not include any of the defendant's witnesses and their testimony, is this enough to show the defendant was denied effective assistance of counsel from the court of appeals appointed counsel?

VIII. If the defendant-appellant's appeals counsel did not file within the time period for oral arguments allowed by the appeals court in this case, is this sufficient grounds for a new trial?

IX. If the defendant-appellant's circuit court or appeals court attorneys did not file for a new trial or *Ginther* hearing, is this sufficient evidence to show defendant was denied effective assistance of counsel? Is this enough for a new trial or directed verdict?

X. If the original attorney hired by the defendant, advised the defendant to waive his preliminary hearing, based on an agreement with the prosecutor, who without advising the defendant's counsel changed his mind about the agreement minutes before the pleading, whereas the defendant's counsel did not ask for a continuance based on the prosecutor's change, show the defendant was denied effective counsel?

XI. If the defendant's witnesses Rich Rohn, Tim Yoe, Chris Angel, Jay Obsniuk and Laura Brennan can testify that Don Clark's testimony

was untrue and that Don Clark had motive to testify falsely, would this be enough evidence to overturn the conviction? Alternatively, would it be enough for a directed verdict to be granted? Alternatively, would it be enough for a new trial to be granted?

XII. The defendant's counsel did not (at the time of filing) and still does not agree that the names of the witnesses and their testimony is needed for the appeals court to grant a new trial. Since the appeals court did believe that the names and testimony was needed, was the defendant denied effective assistance at appeals?

XIII. If the defendant's counsel, not asking for a postponement, for enough time to prepare for trial, evidence that the defendant was denied effective assistance of counsel at trial?

XIV. The defendant asked his circuit court counsel to subpoena the witnesses in all of the questions listed herein. The counsel did not. Is this enough evidence to show the defendant was denied effective assistance of counsel?

XV. The defendant asked his appeals court counsel to include his witnesses and what they would testify to in the appeals court filing? The counsel decided not to. Is this enough to show defendant was denied effective assistance of appeals counsel?

XVI. The defendant now asks the justices to award a directed verdict based on the total amount of evidence the defendant has herein listed.

XVII. The defendant now asks the justices to award a new trial based on the evidence supplied within this document.

The Michigan Supreme Court denied leave to appeal. *People v. Hill, Jr.*, 477 Mich. 910 (Mich. Oct. 31, 2006).

Petitioner now seeks the issuance of a writ of habeas corpus on the following ground:

Petitioner was denied his right to the effective assistance of counsel when

trial counsel failed to review records, call witnesses and admit documents.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

7

## IV. Discussion

Petitioner claims that he was denied the effective assistance of counsel by counsel's unfamiliarity with the relevant records, including cancelled checks, receipts, personal checks, and affidavits showing payment by Petitioner for league expenses; failure to subpoena witness Tim Yoe, the league's accountant; failure to adequately cross-examine the prosecution witnesses.

To prevail on his ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-pronged test for establishing ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. A petitioner is entitled to habeas relief on his or her ineffective assistance of counsel claim if he or she can satisfy both prongs of the *Strickland* test. *See Hall v. Vasbinder,* 551 F.Supp.2d 652, 672 (E.D. Mich. 2008).

In the present case, because petitioner did not raise his ineffective assistance of counsel claims in a proper motion for a new trial or evidentiary hearing in the trial court pursuant to *People v. Ginther,*[1] the Michigan Court of Appeals limited their review of petitioner's ineffective assistance of counsel claim

---

[1] *See People v. Ginther,* 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

to mistakes which were apparent from the record. *Hill, Jr.,* 2006 WL at * 3.

In his first claim, Petitioner argues that counsel was unfamiliar with Petitioner's records relevant to the case. Petitioner argues that these records substantiate the payments made by Petitioner for league expenses over nine years and that counsel's failure to lay a foundation allowing for their admission into evidence prejudiced his defense. Petitioner argues that counsel had an insufficient amount of time to prepare for trial.

Petitioner's first counsel, who had been retained by Petitioner, filed a motion to withdraw following the first trial, which resulted in a hung jury. The court allowed counsel's withdrawal conditioned upon replacement counsel being located. 10/6/04 Motion transcript at pp. 16-18. Substitute counsel was appointed on the same date, October 6, 2004. Retained counsel requested an adjournment of the trial date to allow substitute counsel to become familiar with the case. While acknowledging the complexity of the case, the court denied an adjournment. The trial court found unpersuasive retained counsel's argument that the prospect of presenting ten new witnesses required an adjournment:

> THE COURT: What [is] new about it?
>
> DEF. COUNSEL: They didn't testify. They haven't been interviewed. We don't know what they're going to say.
>
> THE COURT: Well then, how do you know they're going to be witnesses?
>
> DEF. COUNSEL: They need to be witnesses. They're the people that

|                | were involved in the process. |
| --- | --- |
| THE COURT: | Well then, you know what they're going to say. If they're involved in the process, you know what the process is. You must know what role they played. Otherwise, you wouldn't know they're involved in the process. |
| DEF. COUNSEL: | They were board members, Judge. They have been former Board Members. They were vendors. That's how I know they're involved. |

10/6/04 Motion Transcript, p. 21

After this discussion regarding the ten potential witnesses, the court concluded:

> If, there's not a change in the facts which I don't see how there possibly could be since all of this was a matter of record from a year ago, the only thing that can possibly be is that the witnesses can come in and verify what you tried to establish; vis-a-vis physical evidence of the checks and the records that you already have. That's what you're telling me.  That's nothing new about that. Nothing new at all.  Either they corroborate it and they do it, or they don't. If they do, you're going to call them as a witness. If they don't I assume you're not going to.  So that's not new and that's not a change of tactics.
>
> All that does is try to establish vis-a-vis a witness, a corroboration of what your own client testified to on the stand during the course of the first trial. That should not be any problem.  There's nothing new about that that's going to alter the presentation of the defense.

*Id.* at p. 24.

The Michigan Court of Appeals held that Petitioner failed to establish that his attorney was ill-prepared for trial:

> The United States and Michigan Constitutions guarantee a criminal defendant the right to the assistance of counsel.  U.S. Const. Ams.

10

VI and XIV; Const. 1963, art. 1, § 20. "In reviewing a defendant's claim of ineffective assistance of counsel, the reviewing court is to determine (1) whether counsel's performance was objectively unreasonable and (2) whether the defendant was prejudiced by counsel's defective performance." *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). *. .* A defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy.

Because defendant did not move for a new trial or a *Ginther*[] hearing below, our review of a claim of ineffective assistance of counsel is limited to mistakes apparent on the record. . . .

Defendant notes that defense counsel below came to the case only after an earlier trial had resulted in a hung jury, and argues that successor counsel failed to conduct a sufficient investigation and to seek a continuance for that purpose. A defendant alleging that counsel failed to prepare for trial must show that such a lack of preparation resulted in counsel remaining ignorant of substantially beneficial evidence that accordingly did not get presented. . . . In this case, defendant asserts that defense counsel should have brought as witnesses pervious treasurers of the league to show that defendant had made loans to it. Defendant additionally complains that had defense counsel familiarized himself with the proceedings of the previous trial, counsel would have been better prepared to cross-examine prosecution witnesses.

Defendant neither names any specific witnesses who might have attested to his having lent the league money, nor otherwise explains why witness testimony would effectively substantiate a theory of financial transactions for which he could provide no documentation. Defendant similarly fails to explain just what came about in the earlier trial of which defense counsel might have made capital for purposes of strengthening his performance in the instant trial. Defense counsel's decisions concerning the choice of witnesses or theories to present are presumed to be exercises of sound trial strategy. . . . In this case, defendant fails to offer specific enough argument to overcome the presumption that defense counsel saw no strategic advantage in presenting earlier league treasurers, or reviewing the transcripts of the earlier trial.

* * *

> In sum, defendant's general arguments concerning how defense
> counsel might have been more effective only invite speculation.
> Because defendant has failed to meet his burden of proving either a
> serious deficiency on counsel's part, or that the result otherwise
> likely would have been different, we must reject his argument that
> he did not have constitutionally effective assistance of counsel at
> trial.

*Hall, Jr.*, 2006 WL at * 3.

Substitute counsel did not request an adjournment, or indicate in any way on the date trial was scheduled to commence that he was unprepared or needed further time to review the documents and familiarize himself with the case. Although he had only twelve days to prepare for trial, substitute counsel was not starting from ground zero when preparing this case. The Sixth Circuit Court of Appeals, in *U.S. v. Martin*, 740 F.2d 1352, 1361 (6th cir. 1984), held that eleven days was not an insufficient time for retained-substitute counsel to prepare for a complex trial. The Court of Appeals noted that substitute counsel "presumably had access to the fruits of . . . counsel's earlier preparation efforts." *Id.* While twelve days is not a long time to prepare for a complex trial, it is not so short as to be *de facto* insufficient for adequate preparation.

A review of the trial court transcript shows that counsel had a good grasp of the case, was familiar with the financial records, and cross-examined prosecution witnesses effectively. Defense counsel failed to subpoena certified public accountant Tim Yoe. Petitioner argues that Yoe would have testified that

he approved Petitioner's plan to make payments on the league's behalf and then reimburse himself from the league's account. However, Petitioner provides no offer by way of affidavit or other means to support his claim regarding what Yoe's testimony would have been. This conclusory allegation is insufficient to overcome the presumption that counsel's failure to call Yoe was the result of trial strategy. *See Zettlemoyer v. Fulcomer*, 923 F. 2d 284, 298 (3rd Cir. 1991) (holding that "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense" are insufficient to establish ineffective assistance of counsel).

Evidence was presented at trial to show that Petitioner was convicted of embezzling more than $169,000.00 from the league. Petitioner acknowledges that there are no records that exist pertaining to at least $81,000.00 of the missing money. Petition at p. 4. The league's director and vice president for lower baseball testified that Petitioner eventually admitted taking approximately $110,000.00 because he was having a "tough year"and that he would repay it. *Hill, Jr.,* 2006 WL at *2. Given this evidence, the Court is not persuaded that there was a reasonable likelihood that Yoe's testimony would have influenced the jury's verdict.

The Court further notes that the fact that the first trial ended in a hung jury and the second resulted in a conviction does not, by itself, render counsel's assistance ineffective. Two juries presented with the same evidence may come

to contrary conclusions.

Finally, Petitioner indicates that defense counsel was still in the process of assembling exhibits for submission to the jury while deliberations were in progress. The Michigan Court of Appeals rejected this claim finding that petitioner "fails to detail precisely what these exhibits were, let alone why their submission to the jury would have caused it to believe that he had acted on the honest belief that the money he took from the league was money the league owed him." *Hill, Jr.,* 2006 WL at *4. The record fails to support Petitioner's claim that counsel's handling of exhibits was inadequate.

The Court concludes that the Michigan Court of Appeals' decision that counsel was not ineffective was not contrary to or an unreasonable application of *Strickland*.

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that

14

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability.

## VI. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.


                                        S/Denise Page Hood
                                        Denise Page Hood
                                        United States District Judge

Dated: June 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2010, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager